UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELVIN L VIRGIL,

*Plaintiff*,

− against −

AARON FINN, Correction Officer, ALEXANDER J.
CONSTANTINI, Corrections Officer, P. LANGDON,
Corrections Officer, JOHN DOE 1 − 8, Corrections
Officers, in their individual capacities,

*Defendants*.

**COMPLAINT**

Case No. 7:22-CV-3169

MELVIN L. VIRGIL ("MR. VIRGIL"), by his undersigned counsel, Prisoners' Legal Services of New York alleges and states as follows:

## INTRODUCTION

1.       By this civil rights action, MR. VIRGIL, an incarcerated person seeks redress pursuant to 42 U.S.C. § 1983 based on Defendants' intentional violation of MR. VIRGIL's fundamental rights protected by the Eighth and Fourteenth Amendments to the United States Constitution.

2.       Plaintiff, MELVIN L. VIRGIL, seeks relief for an unprovoked and unjustified beating maliciously inflicted upon him by Correctional Officer AARON FINN and in the presence and reach of Corrections Officer ALEXANDER J. COSTANTINI, Corrections Officer P. LANGDON, and Corrections Officers JOHN DOE 1 – 8. Defendants' use of excessive force warrants redress in the form of compensatory and punitive damages, which MR. VIRGIL seeks by this action to recover.

## JURISDICTION AND VENUE

3.       MR. VIRGIL seeks redress pursuant to 42 U.S.C. § 1983 for Defendants' violation of rights protected by the Eighth and Fourteenth Amendments to the United States Constitution.

This Court therefore has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

4.      Venue lies in the Southern District of New York is proper under 28 U.S.C. § 1391(b) and (c), as the events giving rise to this claim occurred within the boundaries of this District.

## THE PARTIES

5.      MELVIN L. VIRGIL, originally from Buffalo, New York, is presently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). At all pertinent times, MR. VIRGIL was housed at DOCCS's Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

6.      At all pertinent times, Defendant AARON FINN was employed as a correctional officer and DOCCS employee at Green Haven.

7.      ALEXANDER J. CONSTANTINI, P. LANGDON was employed as a correctional officer and DOCCS employee at Green Haven.

8.      JOHN DOES 1 -8 were employed by DOCCS as correctional officers at Green Haven.

9.      Defendants are each a "person" under 42 U.S.C. § 1983 and are sued in their individual capacities. Upon information and belief, at all pertinent times, Defendants, each an employee of the State of New York, was/were acting under the color of state law.

## FACTS

10.     On March 19, 2020 Mr. Virgil was incarcerated at Green Haven in the custody of DOCCS.

11.     On March 19, 2020, at approximately 12:30 p.m., Mr. Virgil and his company were returning from chow. Mr. Virgil went to the JPay kiosk to download a movie before finally locking in after chow.

12.     Correctional Officer Aaron Finn was assigned to the bubble of the Company 6 A Block on March 19, 2020. He saw Mr. Virgil go to the kiosk. There was a disagreement about Mr. Virgil's access to the kiosk. Mr. Virgil had been able to use the kiosk after chow and before lock in prior to this date.

13.     Correctional Officer Finn demanded that Mr. Virgil give his identification card to the him. Mr. Virgil questioned why he needed to do so.

14.     Correctional Officer Aaron Finn sprayed Mr. Virgil with Oleoresin Capsicum spray.

15.     Mr. Virgil ordered to get on the wall. He was then handcuffed with his hands behind his back and pat down. He cooperated with the procedure.

16.     Mr. Virgil remained in handcuffs for the duration of this incident.

17.      Correctional Officer Finn moved Mr. Virgil in the block.

18.     Corrections Officer Finn called in a red alert.

19.     Without justification or provocation, Corrections Officer Finn then forcefully slammed Mr. Virgil's head into the gate as they walked down the block.

20.     Mr. Virgil lost consciousness.

21.     Correctional Officers responded to the block in response to Correction Officer Finn's red alert.

22.     Without justification or provocation, Defendant Finn forcefully thrashed Mr. Virgil's body against the wall, and violently slammed his head against the wall multiple times.

23.     Defendant P. Langdon activated his body camera. He arrived on the block as Defendant Finn violently thrashed Mr. Virgil's body and slammed Mr. Virgil's head into the wall.

24.     Correctional Officer P. Langdon continued toward Correctional Officer Finn as Finn continued to violently thrash Mr. Virgil's body and forcefully slam Mr. Virgil's head into the wall.

25.     Defendant Langdon pulled out his baton and stood directly behind Correctional Officer Finn as Finn violently and forcefully assaulted Mr. Virgil. While having reasonable opportunity to stop Defendant Finn's sadistic and malicious assault, he did nothing to stop the assault.

26.     Defendant Finn and Mr. Virgil then fall toward the bars by the stairway. Defendant Finn then, without provocation or justification, forcefully slammed Mr. Virgil's head into the bars surrounding the stairway.

27.     Defendant Langdon now stood beside Corrections Officer Finn as Finn violently slammed Mr. Virgil's head into the bars. Defendant Langdon, despite reasonable opportunity to do so, did not stop Defendant Finn's malicious and sadistic assault on Mr. Virgil.

28.     Defendant Finn calls Mr. Virgil "Fucker" and let Mr. Virgil's limp body fall to the ground.

29.     After the savage beating stopped, Defendant Langdon told Defendant Finn to calm down.

30.     Defendant Finn carried out the assaults upon Mr. Virgil in bad faith, sadistically and maliciously for the very purpose of causing harm. The force used by Defendant Finn was not in any way justified, nor necessary to either maintain or restore order.

31.     Mr. Virgil was handcuffed behind his back throughout the entire malicious and sadistic assault.

32.     Mr. Virgil's unconscious body fell to the floor and a horrific guttural moan came out of his throat. He laid on his side with his legs bent at the knee. Mr. Virgil, in a semi- conscious state, began to roll on his back.

33.     Defendant Alexander J. Constantini, who was assigned to 6 Company A Block that day, an upon information and belief, was within reach of Defendant Finn as he savagely beat Mr. Virgil. Despite reasonable opportunity to do so, Defendant Constantini did not prevent or stop Defendant Finn from maliciously and sadistically assaulting Mr. Virgil.

34.     Mr. Virgil began to roll on his back after the assault, Defendant Constantini quickly grabbed Mr. Virgil's feet so he did not move them.

35.      Defendant Finn yelled at Mr. Virgil to get on his stomach. Mr. Virgil, who was semi-conscious, rolled onto his stomach. Defendant Finn held Mr. Virgil's torso down to the floor. Defendant Constantini continued to hold Mr. Virgil's legs down. Mr. Virgil never kicked at the officers, nor was he combative. Mr. Virgil was in and out of consciousness at this time.

36.     Defendant John Doe 1, as Defendant Finn violently thrashed Mr. Virgil's body against the wall and slammed Mr. Virgil's head against the wall, slowly walked over to Defendant Finn. Despite having reasonable opportunity to stop Defendant Finn's savage beating of Mr. Virgil, he did not do so.

37.     An unidentified supervisor arrived, and through his body camera video footage of March 19, 2020 we see seven (7) more unidentified correctional officers standing in the area where Defendant Finn maliciously and sadistically assaulted Mr. Virgil. Defendants John Doe 2 -7,

despite having reasonable opportunity to prevent or stop the malicious and sadistic beating of Mr. Virgil did not do so.

38.     The supervisor demanded to know who cuffed Mr. Virgil. No one answered and the supervisor tells the uninvolved staff to leave. Correctional Officer Langdon and Correctional Officer Polito remain with Mr. Virgil

**MR. VIRGIL'S INJURIES**

39.     On the floor of 6 Company, A Block of Green Haven, after his severe beating by Defendant Aaron Finn, Mr. Virgil was unconscious and semi-conscious. Despite having his head slammed into the wall and into the bars, Sergeant Dennis J. Benitez, Jr. had Defendant Langdon and Corrections Officer Frank J. Polito stand him up against the wall. There was a puddle of blood on the floor by Mr. Virgil's feet, a splatter of blood by Mr. Virgil's head, and a pool of blood in the corner where the bars and the wall meet. This blood was not present before Mr. Virgil was brutally beaten.

40.     Mr. Virgil was taken to the medical unit and examined. He had four (4) lacerations to his face. One (1) in his mid-forehead that is one-and-three-quarter inches long and bleeding. This wound required two (2) sutures. The next wound is a one (1) inch long laceration to his left eyebrow. This wound required two sutures. The next wound is a second laceration his left eyebrow two-and-one-half inches long. This injury required 8 sutures. The fourth wound was a one third inch laceration on his left cheek. This wound was closed with Dermabond glue. Mr. Virgil also received a gash to his upper lip and a gash to his gums. One or more of Mr. Virgil's teeth were chipped. Mr. Virgil had pain, bruising, and swelling to his face, forehead, and neck, as well as cuts to his mouth, top and bottom lips. Mr. Virgil remembers nothing from the time of his head being slammed until he became conscious again in the medical unit.

41.     Mr. Virgil has permanent scars on his forehead and eyebrow from this savage beating. The medical staff failed to provide Mr. Virgil with appropriate or adequate treatment. He had severe, throbbing headaches for more than ten (10) days and received no treatment for them. He still has severe headaches two or three times a week. His teeth ached after his beating on March 19, 2020 and he received no dental treatment at all until April 7, 2020. On that date he only received a visual examination and antibiotics. His left central incisor is still damaged and his left lateral incisor still aches two years later.

42.     Mr. Virgil also suffered emotional trauma from being assaulted while handcuffed behind his back without any way to protect himself. Immediately after this vicious assault, he felt hopeless and fearful. Any time he hears the jingle of handcuffs he becomes fearful, anxious and tense. He is fearful he may be assaulted again. Often, he remains fearful, anxious and tense for twenty-five (25) to thirty (30) minutes after he hears the sounds of cuffs.

### EXHAUSTION

43.     On March 22, 2020, March 28, 2020, and March 29, 2020 Mr. Virgil filed three grievances regarding the assault by Correctional Officer Finn and his lack of medical treatment. Inmate Grievance Supervisor Stanaway consolidated all three grievances. Mr. Virgil timely appealed his combined grievance to the superintendent. Superintendent Mark Royce made his determination on April 28, 2020. Mr. Virgil appealed to the Central Office Review Committee on April 30, 2020.

44.     On May 1, 2020, Inmate Grievance Program Supervisor Stanaway sent the appeal packet to the Central Office Review Committee (herein, CORC). On July 23, 2020, made their decision on the combined appeal.

45.     Mr. Virgil has exhausted all administrative remedies available to him.

## LEGAL CLAIMS

## FIRST CLAIM FOR RELIEF

## <u>(Against Defendants FINN,</u>

46.     Mr. Virgil repeats and realleges every allegation set forth above with the same force and effect as if set forth in full herein.

47.     By his actions described herein, of maliciously and sadistically assaulting Mr. Virgil on March 19, 2020, at Green Haven Correctional Facility, Defendant Finn violated Mr. Virgil's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.

## SECOND CLAIM FOR RELIEF

## (Against Defendants CONSTANTINI, LANDGON, JOHN DOES 1 -8)

48.     Mr. Virgil repeats and realleges every allegation set forth above with the same force and effect as if set forth in full herein.

49.     By their actions as described herein, in failing to intervene to stop or prevent the assault on Mr. Virgil, despite a reasonable opportunity to do so, Defendants Alexander Constantini, P. Langdon, and John Does 1 - 8 violated Mr. Virgil's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.

**WHEREFORE**, MR. VIRGIL respectfully requests an Order of this Court:

(a)     Declaring and adjudging that Defendants' acts alleged herein violate Mr. Virgil's rights under the Constitution and laws of the United States;

(b)     Entering judgment in favor of Mr. Virgil for reasonable actual and compensatory, including consequential, damages against each of the Defendants, jointly and severally, to compensate Mr. Virgil for his pain, suffering, and other hardships arising from the assault upon him;

(c)     Entering judgment for Mr. Virgil for reasonable punitive damages against each of

the Defendants;

(d)     Awarding Mr. Virgil the costs of this action, including reasonable attorneys' fees;

(e)     Retaining jurisdiction over this case until Defendants have fully complied with the

orders of this Court; and

(f)     Granting such other and further relief as the Court deems just and proper.

**DATED:**     April 18, 2022
               Newburgh, New York

**PRISONERS' LEGAL SERVICES OF NEW YORK**

By: _/s/ Marie-Ann Sennett_____
MARIE-ANN SENNETT, Esq.
Attorney for Plaintiff Melvin L. Virgil
Bar Roll No. 2300697

PRISONERS' LEGAL SERVICES OF NY
Karen L. Murtagh, Executive Director
10 Little Britain Road
Newburgh, NY 12550
Tel: (845) 391-3110
Fax: (518) 684-2272
Email:   msennett@plsny.org