UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MELVIN L. VIRGIL,                                  :
                                                   :
                                    Plaintiff,     :
                                                   :            **22-CV-3169 (CS)**
                      - against -                  :
                                                   :
AARON FINN, et al.,                                :
                                    Defendants.     :
------------------------------------------------------------ X


**MEMORANDUM OF LAW IN SUPPORT OF
SUPERVISORY DEFENDANTS' MOTION TO DISMISS**

LETITIA JAMES
Attorney General of the
State of New York
<u>Attorney for Defendants Annucci and Royce</u>
28 Liberty Street
New York, New York 10005
(212) 416- 6359

ANDREW BLANCATO
Assistant Attorney General
<u>Of Counsel</u>

i

# Table of Contents

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

STANDARDS OF REVIEW ............................................................................... 3

ARGUMENT ....................................................................................................... 4

   POINT I_THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FACTS
            DEMONSTRATING DELIBERATE INDIFFERENCE TO DEFENDANT
            FINN'S ALLEGED PTSD. ........................................................... 4

      a)   Defendant Finn's Return to Work Did Not Present an Unreasonable Risk of
           Serious Harm ............................................................................... 5

      b)   The Supervisory Defendants Did Not Disregard an Excessive Risk to I/I
           Safety .......................................................................................... 6

   POINT II_THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FACTS
            DEMONSTRATING DELIBERATE INDIFFERENCE TO DEFENDANT
            FINN'S ALLEGED PRIOR INSTANCES OF EXCESSIVE FORCE. ............ 6

   POINT III_THE SUPERVISORY DEFENDANTS ARE ENTITLED TO QUALIFIED
            IMMUNITY. ................................................................................. 9

   POINT IV_THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FACTS
            DEMONSTRATING THE PERSONAL INVOLVEMENT OF THE
            SUPERVISORY DEFENDANTS. ...................................................... 11

   POINT V_PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND ............. 15

CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abernathy v. Comm'r of Correction*,
   3:20-cv-00628, 2021 U.S. Dist. LEXIS 64738 (D. Conn. Apr. 2, 2021) ..............................13

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011).............................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................3

*Brunache v. Annucci*,
   22-CV-196, 2023 U.S. Dist. LEXIS 4529 (W.D.N.Y. Jan 9, 2023)......................................13

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)................................................................................................4

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995)........................................................................................... 11-12

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000).................................................................................................15

*Earley v. Annucci*,
   No. 9:08-CV-669, 2017 U.S. Dist. LEXIS 28949 (N.D.N.Y. Feb. 28, 2017) ........................10

*Farmer v. Brennan*,
   511 U.S. 825 (1994)............................................................................................................4

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010)................................................................................................4

*Kalyanaram v. Am. Ass'n of Univ. Professors*,
   742 F.3d 42 (2d Cir. 2014), cert. denied, 135 S. Ct. 677 (2014) ................................4

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021)................................................................................................6

*Lynch v. Ackley*,
   811 F.3d 569 (2d Cir. 2016)................................................................................................9

*Martinez v. California*,
    444 U.S. 277 (1980)......................................................................................................5

*McCants v. City of Newburgh*,
    14-CV-0556, 2014 U.S. Dist. LEXIS 165821 (S.D.N.Y. Nov. 21, 2014)................................8

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)........................................................................................3

*Poe v. Leonard*,
    282 F. 3d 123 (2d Cir. 2002)......................................................................................7

*Poulos v. Annucci*,
    9:18-CV-1279, 2019 U.S. Dist. LEXIS 203952 (N.D.N.Y. Nov 25, 2019)......................8, 14

*Pusepa v. Annucci*,
    17-CV-7954, 2019 U.S. Dist. LEXIS 26292 (S.D.N.Y. Feb. 19, 2019)................................12

*Rhodes v. Chapman*,
    452 U.S. 337 (1981)......................................................................................................5

*Robison v. Via*,
    821 F.2d 913 (2d Cir. 1987)........................................................................................9

*Santiago v. Fischer*,
    09-CV-1383, 2016 U.S. Dist. LEXIS 36554 (E.D.N.Y. Mar. 21, 2016)................................10

*Smith v. Goord*,
    07-CV-6265, 2008 U.S. Dist. LEXIS 9958 (W.D.N.Y. February 11, 2008)............................7

*Stone v. Annucci*,
    20-CV-1326, 2021 U.S. Dist. LEXIS 186195 (S.D.N.Y. Sept. 28, 2021)........................ 12-13

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020)............................................................................... *passim*

*U.S. v. Finn*,
    No. 21-cr-650 (S.D.N.Y. Oct. 20, 2022), ECF Doc. No. 26–19.................................5

*Valle v. Police Dep't Cnty. of Suffolk Cent. Records*,
    No. 10–CV–2847, 2010 WL 3958432 (E.D.N.Y. Oct. 7, 2010) ............................................15

*Vassalo v. City of New York*,
    15 Civ. 7125, 2016 U.S. Dist. LEXIS 162704 (S.D.N.Y. Nov. 22, 2016) ............................13

*White v. Pauly*,
    580 U.S. 73 (2017).......................................................................................................9

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ........................................................................................5

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994) ..........................................................................11

## CONSTITUTIONS

Eighth Amendment ...................................................................................................8

## FEDERAL STATUTES

18 U.S.C. § 242 ........................................................................................................3

## RULES

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................................3-4

## PRELIMINARY STATEMENT

Defendant Anthony J. Annucci is and was at all relevant times the Commissioner of the New York Department of Corrections and Community Supervision ("DOCCS").  Defendant Mark Royce was Superintendent of Green Haven Correctional Facility ("Green Haven") from June 2019 to September 2020.   Defendants Annucci and Royce ("Supervisory Defendants"), by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint ("Second Amended Complaint" or "Amen. Compl.") filed March 24, 2023 (ECF Doc. No. 74).

Plaintiff Melvin L. Virgil ("Plaintiff") is an incarcerated individual ("I/I") who filed the Second Amended Complaint alleging several causes of action stemming from an incident of alleged excessive force used against him at Green Haven on March 19, 2020 by former Correction Officer ("CO") Defendant Aaron Finn.  See generally, Amen. Compl.  CO Defendant Philip Langdon and CO Defendant Alexander Costantini were at all relevant times correction officers at Green Haven who are alleged to have been at the scene of Defendant Finn's excessive force. Plaintiff pleads that Defendant Finn is liable for excessive force, while Defendants Langdon and Costantini are both liable for their failure to intervene to stop or prevent Finn's excessive force. Id.  Plaintiff further pleads that the deliberate indifference of the Supervisory Defendants enabled Defendant Finn's excessive force.   Id.   Specifically, Plaintiff pleads that the Supervisory Defendants were deliberately indifferent to Defendant Finn's susceptibility to using excessive force based on two prior unsubstantiated force complaints against him from 2015 (see Amen. Compl. ¶¶ 9, 190–224) and deliberately indifferent to a pattern of excessive force that allegedly

1

pervaded New York Department of Corrections and Community Supervision ("DOCCS") facilities, including Green Haven (see Amen. Compl. ¶¶ 225–349).

Even accepting the facts alleged by Plaintiff as true, he fails to plead sufficient facts to demonstrate that the Supervisory Defendants were deliberately indifferent. Plaintiff's claim that the Supervisory Defendants were deliberately indifferent to Defendant Finn's alleged susceptibility to using excessive force fails to state facts demonstrating that either Defendant Annucci or Defendant Royce exposed Plaintiff to an objectively unreasonable risk of serious harm, or that either defendant knew in advance of a substantial risk to allowing Defendant Finn to continue working at Green Haven. Plaintiff's remaining cause of action against the Supervisory Defendants—that a pattern of excessive force was permitted to continue in DOCCS and enabled Defendant Finn to assault Plaintiff—fails to demonstrate the personal involvement of either Defendant Annucci or Defendant Royce in Plaintiff's assault. Consequently, Plaintiff's pleadings against the Supervisory Defendants should be dismissed in their entirety and with prejudice.

## STATEMENT OF FACTS

Plaintiff alleges that, on March 19, 2020, while he was incarcerated at Green Haven, former CO Aaron Finn attacked him by spraying him with Oleoresin Capsicum spray and then ramming his head against the bars and wall of a cell. See Amen. Compl., ¶¶ 32–36. Plaintiff pleads that Defendant Finn "reportedly" suffered from post-traumatic stress disorder ("PTSD") at the time of the incident that made him vulnerable to impulse control difficulties and aggressive behavior. Id. at ¶ 2. Plaintiff pleads that his PTSD was reportedly developed after an earlier incident wherein Defendant Finn was stabbed by an incarcerated individual at Green Haven on October 28, 2019. Id. at ¶¶ 169–70. Plaintiff alleges that Defendant Finn took several months off following the

incident but was then ordered back to work by the Supervisory Defendants "too early" on February 14, 2020, without first passing a psychological evaluation.  Id.  at ¶¶ 9, 192, 197.

Plaintiff further alleges that Defendant Finn had a "penchant" for aggressive behavior, as evidenced by two unsubstantiated allegations of misconduct against him in 2015, five years prior to the incident at issue in this case.  Id. at ¶¶ 207–15, 224.

Following the assault on March 19, 2020 against Plaintiff, DOCCS ordered an investigation into the incident and referred the findings to the Federal Bureau of Investigation.  Id. at ¶ 159.  A felony indictment was issued by the United States Attorney's Office, charging Defendant Finn with one count of deprivation of rights under color of law (18 U.S.C. § 242).  Id. at ¶ 160.  Defendant Finn pled guilty on July 12, 2022 and allocuted that he willfully used force that was excessive against Plaintiff and that he was very sorry.  Id. at ¶¶ 160–61.

## STANDARDS OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Courts follow a "two pronged approach" to determine plausibility.  Iqbal, 556 U.S. at 678.  "First, although a complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  Conclusory allegations are not entitled to the assumption of truth in a complaint sufficiency analysis.  See Iqbal, 556 U.S. at 678-79.  Second,

"a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In considering a Rule 12(b)(6) motion, in addition to the Complaint, the Court may consider: (i) exhibits attached to the complaint; (ii) statements or documents incorporated by reference; (iii) matters of which the Court may take judicial notice; and (iv) documents which are integral to plaintiff's claims. See Kalyanaram v. Am. Ass'n of Univ. Professors, 742 F.3d 42, 44 n.1 (2d Cir. 2014), cert. denied, 135 S. Ct. 677 (2014); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted).

## ARGUMENT

### POINT I
### THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FACTS DEMONSTRATING DELIBERATE INDIFFERENCE TO DEFENDANT FINN'S ALLEGED PTSD.

To state a claim under the Eighth Amendment on the basis that a defendant failed to prevent a harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendants acted with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference in this context "means the official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Tangreti v. Bachmann, 983 F.3d 609, 618–19 (2d Cir. 2020) (quoting Farmer, 511 U.S. at 837).

**a) Defendant Finn's Return to Work Did Not Present an Unreasonable Risk of Serious Harm**

The conditions of confinement alleged by Plaintiff to support his deliberate indifference claim do not pose an objectively unreasonable risk of serious harm. The excessive risk deprivation alleged must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (holding an official's act or omission must result in the denial of "the minimal civilized measure of life's necessities"). Here, Plaintiff pleads one of the two conditions of confinement posing an unreasonable risk of serious harm to his health was permitting Defendant Finn to return to work absent a psychological evaluation following Defendant Finn's alleged stabbing in October 2019. See Amen. Compl., ¶¶ 218, 221–22, 333. Plaintiff pleads that COs who are reportedly diagnosed with PTSD pose an "unacceptable risk" that they will inflict unjustified excessive force on the I/I population. Id. at ¶ 224. Plaintiff fails to plead sufficient facts demonstrating how Defendant Finn, specifically, posed an unacceptable risk of serious harm. See generally, Amen. Compl. The Second Amended Complaint is bereft of facts suggesting that in the months following this altercation, Defendant Finn was so objectively unstable that it would have posed an unreasonable risk to incarcerated individuals to allow him to work. Id. Defendant Finn's own sentencing letter, referenced by the Second Amended Complaint, indicates that he was not diagnosed with a psychiatric disorder prior to his attack on Plaintiff, belying the claim there was evidence that he was a danger to I/Is. U.S. v. Finn, No. 21-cr-650 (S.D.N.Y. Oct. 20, 2022), ECF Doc. No. 26–19 (Blancato Decl., **Ex. C**). Plaintiff's pleading that the decision to permit Defendant Finn to return to work was a form of cruel and unusual punishment without particularized facts demonstrating Defendant Finn's potential for harm is simply too remote to form the basis for §1983 liability. See Martinez v. California, 444 U.S. 277,

285 (1980) ("it is perfectly clear that not every injury in which a state official has played some part is actionable under the statute").

### b) The Supervisory Defendants Did Not Disregard an Excessive Risk to I/I Safety

Even if Defendant Finn's return to work in 2020 did pose an unreasonable risk of harm, Plaintiff does not adequately plead that the Supervisory Defendants were aware of such a risk. Plaintiff pleads that Defendant Annucci personally called Defendant Finn to assure him he would be "taken care of" in the wake of his October 2019 altercation. See Amen. Compl. at ¶¶ 185, 199. Plaintiff speculates that Defendant Royce was on the phone call as well. Id. at ¶¶ 185, 203. These allegations, even if true, suggest only that Defendant Annucci and Defendant Royce may have been aware of the October 2019 altercation involving Finn; it does not infer knowledge of a risk to Plaintiff.  This falls short of the pleading standard.  See Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 864 (2d Cir. 2021) ("plaintiffs are required to include allegations of the facts or events they claim give rise to an inference of knowledge").  Because Plaintiff does not directly or indirectly plead that either of the Supervisory Defendants had knowledge that ordering Defendant Finn back to work posed an excessive risk to I/I safety, this claim fails.

### POINT II
### THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FACTS DEMONSTRATING DELIBERATE INDIFFERENCE TO DEFENDANT FINN'S ALLEGED PRIOR INSTANCES OF EXCESSIVE FORCE.

The second claim which Plaintiff pleads posed an unreasonable risk to his health—that two prior unsubstantiated allegations of excessive force by Defendant Finn made him "susceptible" to excessive force—also fails to support his § 1983 claim against the Supervisory Defendants.  In his Second Amended Complaint, Plaintiff pleads that Defendant Finn was alleged by I/Is to have committed two separate acts of excessive force in 2015. Id. at ¶¶ 9, 207–15.  In July of 2015, Defendant Finn allegedly handcuffed and rammed the head of an I/I into a wall. Id. at ¶ 209.  In

October of 2015, Defendant Finn allegedly grabbed an I/I by the waist and threw him to the floor. Id. at ¶ 214. Plaintiff concedes that these allegations were investigated and found unsubstantiated, but nonetheless alleges that both Supervisory Defendants knew of these underlying allegations. Id. at ¶ 217.

Plaintiff however fails to provide sufficient facts explaining how the Supervisory Defendants would have known of Defendant Finn's prior allegations. The absence of these facts is fatal to Plaintiff's claim. See Smith v. Goord, 07-CV-6265, 2008 U.S. Dist. LEXIS 9958, *8 (W.D.N.Y. February 11, 2008) (dismissing complaint as allegations only speculated Commissioner had notice of an assault because he should have known of prison's dangerous conditions).

Defendant Royce's supposed knowledge of the 2015 allegations made against Defendant Finn is particularly doubtful considering he was not superintendent of Green Haven until 2019. Annexed to the Declaration of Andrew Blancato is the affidavit of Defendant Royce and a certified DOCCS record of promotion which, taken together, demonstrate that Defendant Royce was not Superintendent of Green Haven until 2019, and in 2015 he was working exclusively in Sing Sing Correctional Facility. See Blancato Decl., **Ex. A**, **Ex. B**. This point was mentioned in the Supervisory Defendants' pre-motion letter dated December 16, 2022 (ECF Doc. No. 64) and while Plaintiff has amended his complaint for a second time since the pre-motion conference, no explanation has been provided clarifying why Defendant Royce would have knowledge of Defendant Finn's previous alleged misconduct. See generally, Second Amended Complaint. As the incoming superintendent in 2019, Defendant Royce would not have been obligated – nor likely able – to review every correction officer's disciplinary record and therefore unlikely to know of Defendant Finn's prior allegations. See Poe v. Leonard, 282 F. 3d 123 (2d Cir. 2002) ("a

supervisor is not liable for failing to review an inherited subordinate's personnel history upon assuming command, absent some independent reason for him to do so").

Moreover, the number of prior claims allegedly made against Defendant Finn—two—over a period of five years, is insufficient to demonstrate that Defendant Finn had a practice of using excessive force. This claim bears a striking similarity to the facts of <u>Poulos v. Annucci</u>. In <u>Poulos</u>, Commissioner Annucci and former Great Meadow Correctional Facility ("Great Meadow") Superintendent Christopher Miller were sued individually by an I/I who claimed he was a victim of excessive force and the failure to intervene by several Great Meadow correction officers. <u>See generally</u>, <u>Poulos v. Annucci</u>, 9:18-CV-1279, 2019 U.S. Dist. LEXIS 203952 (N.D.N.Y. Nov 25, 2019). Plaintiff claimed that defendants Annucci and Miller had knowledge of a risk of harm with the officer officers based on three prior lawsuits involving two of the named officers. <u>See id.</u> at *21. The Court rejected plaintiff's argument and granted the motion to dismiss on behalf of defendants Annucci and Miller, finding that three lawsuits did not provide notice of a risk of harm to I/Is from the officer defendants. <u>See id.</u> ("[a]lthough courts within this Circuit have recognized that prior lawsuits are relevant for showing notice or a custom or practice, cases where motions to dismiss have been denied based in part on prior lawsuits have involved a much more significant number of lawsuits than the number alleged here"); <u>see also</u>, <u>McCants v. City of Newburgh</u>, 14-CV-0556, 2014 U.S. Dist. LEXIS 165821, *4 (S.D.N.Y. Nov. 21, 2014) (denying motion to dismiss where plaintiff cited 17 similar lawsuits). In sum, Plaintiff fails to provide any fact explaining how or why Defendant Annucci or Defendant Royce would have known of Defendant Finn's prior allegations, and even if they did, these allegations are too limited to provide knowledge that continuing to employ Defendant Finn posed an unreasonable risk of harm. For this reason, this pleading must fail.

## POINT III
## THE SUPERVISORY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Alternatively, even if the Supervisory Defendants knew of the prior allegations of Defendant Finn's excessive force and/or Defendant Finn having allegedly suffered PTSD at the time of the subject incident of excessive force, it did not violate clearly established law to permit Officer Finn to return to work absent a mental health evaluation.

The doctrine of qualified immunity protects government officials from suit when either (1) the "official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" or (2) it was objectively reasonable for the official to believe that their acts did not violate these clearly established rights.  White v. Pauly, 580 U.S. 73, 77 (2017). "[C]onduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citation and internal quotation marks omitted).  The Supreme Court instructs "not to define clearly established law at a high level of generality."  Id. at 742.  Qualified immunity is also available if, notwithstanding the clear delineation of the rights, "it was objectively reasonable for [an official] to believe that his acts did not violate those rights."  Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987).  Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in [the] litigation.'" Lynch v. Ackley, 811 F.3d 569, 576 (2d Cir. 2016) (quoting Pearson v. Callahan, 555 U.S. 223, 231-32, (2009)).

Here, there is no direct allegation in the Second Amended Complaint that allowing Defendant Finn to return to work violated clearly established law, nor can this inference be made. Plaintiff's claim is novel; he has not identified precedent in this jurisdiction or elsewhere

suggesting that requiring mental health evaluations for correction officers is required to safeguard I/Is. Plaintiff merely alleges, by reference to a sentencing letter written by a former colleague Correction Officer of Defendant Finn's–that "every other state entity [] requires a psychological evaluation after any traumatic incident, except for NYS DOCCS." Amen. Compl., ¶ 181. Even if the failure to impose mental health evaluations on certain officers were later found to be an unreasonable risk, it was not the law at the time of the incident in 2020, which is why qualified immunity should be granted to the Supervisory Defendants. See Earley v. Annucci, No. 9:08-CV-669, 2017 U.S. Dist. LEXIS 28949, *18 (N.D.N.Y. Feb. 28, 2017) (holding that Commissioner Annucci was entitled to qualified immunity because it was not yet clearly established that the administrative imposition of a post-release supervision term was a due process violation); see also, Santiago v. Fischer, 09-CV-1383, 2016 U.S. Dist. LEXIS 36554, *21 (E.D.N.Y. Mar. 21, 2016) ("Defendants are entitled to qualified immunity because it was not yet clearly established that the administrative imposition of [post-release supervision] terms was a due process violation").

## POINT IV
## THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FACTS DEMONSTRATING THE PERSONAL INVOLVEMENT OF THE SUPERVISORY DEFENDANTS.

Plaintiff's final theory of liability attempts to claim that the Supervisory Defendants were aware of a practice or custom of excessive force happening throughout DOCCS facilities and that they were deliberately indifferent to the effects of this practice or custom. Plaintiff pleads that there was a "culture of brutality" that permeated DOCCS facilities generally, citing a Marshall Project/New York Times study from 2015-2016 and a 2016 excessive force incident at Downstate Correctional Facility. See Amen. Compl., ¶¶ 238–62. Plaintiff cites a 2006 report from the Correctional Association of New York which allegedly "documented in detail the realities of the violence that COs inflict on incarcerated people at Green Haven." Id. at ¶ 231. Plaintiff also cites a number of "recent" lawsuits since 2019 which supposedly demonstrate the wide variety of excessive force used by DOCCS correction officers at Green Haven, Sullivan Correctional Facility, Ulster Correctional Facility, Fishkill Correctional Facility, Elmira Correctional Facility, and Wende Correctional Facility. Id. at ¶¶ 263–99. Nonetheless, Plaintiff's diverse references fail to plausibly allege a unique practice or custom that led to his injury.

To state a claim for a government official's liability pursuant to Section 1983, a plaintiff must allege that the defendant was personally involved in the constitutional deprivation at issue. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). The Second Circuit's test for such personal involvement was, for many years, governed by the factors set out in Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995). In Colon, the Second Circuit identified five ways in which a plaintiff may establish a supervisory defendant's personal involvement" in a constitutional violation: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant

created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Id. at 873.

In 2009, the Supreme Court decided Ashcroft v. Iqbal, holding that vicarious liability does not apply to Section 1983 liability, narrowing the scope of a supervisory defendant's personal involvement in a qualifying case. See Iqbal, 556 U.S. at 676. The Second Circuit then confirmed Iqbal's impact on Section 1983 suits and rejected the prior Colon formula when it decided Tangreti, holding there was no "special rule for supervisory liability" and that the "violation must be established against the supervisory official directly." Tangreti, 983 F.3d at 618.

Since Tangreti, District Courts in this Circuit have held that policymaker liability, premised on Colon factor three, can serve as a sufficient basis for personal involvement if "the defendant had policymaking responsibility and that, after notice of an unconstitutional practice, the defendant created the improper policy or allowed it to continue, causing the harm." Stone v. Annucci, 20-CV-1326, 2021 U.S. Dist. LEXIS 186195, *34 (S.D.N.Y. Sept. 28, 2021) (citing Pusepa v. Annucci, 17-CV-7954, 2019 U.S. Dist. LEXIS 26292, *4 (S.D.N.Y. Feb. 19, 2019)). District Courts have reconciled these decisions with Tangreti and Iqbal by finding that the unconstitutional practice need be a policymaker's "personal handiwork," as that would be different from "holding a supervisor vicariously liable for the actions of his subordinates." Stone, 2021 U.S. Dist. LEXIS at *8–9. That is because the facts of a policy or practice need to be sufficiently specific to demonstrate a plausible—rather than possible—connection to the plaintiff's specific injury. See Pusepa, 2019 U.S. Dist. LEXIS 26292 at *8; see also, Iqbal, 556 U.S. at 679 ("where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief" (internal quotations omitted)); Vassalo v. City of New York, 15 Civ. 7125, 2016 U.S. Dist. LEXIS 162704, *42 (S.D.N.Y. Nov. 22, 2016) ("under the pleading requirements imposed by Twombly and Iqbal, Plaintiff must give a factual description of the injurious policy or custom, "not just bald allegations that such a thing existed" (internal quotations omitted)).

Since Tangreti, those cases alleging policymaker liability in § 1983 suits survive motions to dismiss by pleading specific facts from which a discernable practice or custom can be gleaned to have plausibly led to a particular plaintiff's injury.  In Stone, plaintiffs described a series of specific practices that led to their injuries: unmonitored one-on-one access to female inmates, the lack of unpredictable and unannounced supervisor rounds, the inadequate placement and monitoring of cameras; the custom of allowing correction officers to swap assignments with each other informally.  See Stone, 2021 U.S. Dist. LEXIS at *39–40.  In Brunache v. Annucci, plaintiff expressly alleged that Commissioner Annucci implemented a policy that was used to deny him pain medication to treat his long-standing pain and neurological condition.  Brunache v. Annucci, 22-CV-196, 2023 U.S. Dist. LEXIS 4529 *32–33 (W.D.N.Y. Jan 9, 2023).  In denying the motion to dismiss, the District Court highlighted the need for a discernable practice in the pleading, holding that "cases involving conclusory allegations of an unwritten policy of Annucci or some other high-ranking corrections official are distinguishable."  Id.  In Abernathy v. Comm'r of Correction, the District of Connecticut granted defendant's motion to dismiss, but acknowledged that the warden could be held liable for creating a specific policy of "broken ventilation and procedures implemented for excessive heat."  See Abernathy v. Comm'r of Correction, 3:20-cv-00628, 2021 U.S. Dist. LEXIS 64738 *3–4 (D. Conn. Apr. 2, 2021).

Here, no specific policy is alleged. Instead, Plaintiff cites reports and lawsuits which highlight different years, different facilities, different locations, and different underlying injuries that supposedly demonstrate a singular custom. See Amen. Compl., ¶¶ 238–62. But such a broad swath of cases serves only as evidence of various types of excessive force, not any type of unique practice or specific custom. Since Tangreti, policymaker liability has not been expanded to include such general, unparticularized claims of excessive force as a practice or custom. Even before Tangreti, policymaker claims based on the Correctional Association of New York ("CANY") reports and remarks by former U.S. Attorney Preet Bharara, as Plaintiff has referenced here, have been dismissed. See, e.g., Poulos, 2019 U.S. Dist. LEXIS at *17–18 ("plaintiff has failed to allege facts plausibly suggesting that this [2006 CANY] report provided defendants Annucci and Miller with knowledge of any policy, custom, or risk of harm to plaintiff").

Moreover, the only fact repeatedly described in the Second Amended Complaint suggesting excessive force was the handiwork of the Supervisory Defendants is not a fact at all, but rather a claim that excessive force happened "under the tenure" of the Supervisory Defendants, or a reference to the DOCCS chain of command such as Plaintiff's discussion about the relationship between Defendant Royce and the grievance process. See Amen. Compl., ¶¶ 10, 225, 228, 257, 314–15, 349, 359; 351–60. This fails to plausibly suggest personal involvement, and instead, nakedly emphasizes the supervisory roles of Defendants Annucci and Royce. In other words, Plaintiff cites allegations of excessive force throughout the State as evidence of a custom and provides no information as to why this was known to the Supervisory Defendants other than by highlighting the fact they are or were supervisors. Id. Were this sufficient to plead personal involvement, it would mean Commissioner Annucci could be held liable for every future lawsuit alleging excessive force by *virtue of his title,* as long as references to prior lawsuits were made.

This is, by definition, vicarious liability, and it no longer serves as a predicate for supervisory liability.  See Iqbal, 556 U.S. at 676 ("absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

In sum, Plaintiff's vague and varied citations to allegations ranging in location, year, and detail, is insufficient to possibly serve as notice of an injurious custom or practice.

**POINT V**

**<u>PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND</u>**

While plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000). Leave to amend is properly denied where all indications are that the plaintiff will be unable to state a valid claim. See <u>Valle v. Police Dep't Cnty. of Suffolk Cent. Records</u>, No. 10–CV–2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010).  For the reasons stated, *supra*, any amendment would be futile, as Plaintiff has not sustained a constitutional injury conferring jurisdiction on this Court, despite now having three opportunities to plead these claims against the Supervisory Defendants.   It is unlikely that Plaintiff will demonstrate a constitutional injury if given another opportunity to amend, especially considering he has been represented by counsel at all relevant times.

15

## <u>CONCLUSION</u>

For the foregoing reasons, the Supervisory Defendants respectfully request that the Court grant their Motion in its entirety and dismiss with prejudice the Second Amended Complaint as alleged against them and terminate the Supervisory Defendants from this action.

Dated: New York, New York
      April 14, 2023

                          LETITIA JAMES
                          Attorney General of the
                          State of New York
                          <u>Attorney for Defendants Annucci and Royce</u>
                          By:

                          <u>  /s/ Andrew Blancato          </u>
                          Andrew Blancato
                          Assistant Attorney General
                          28 Liberty Street
                          New York, New York 10005
                          (212) 416- 6359
                          Andrew.Blancato@ag.ny.gov