UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MELVIN L. VIRGIL,

                        Plaintiff,                                  **ORDER**

            -against-                                               22 Civ. 3169 (CS)(JCM)

AARON FINN, Corrections Officer,
ALEXANDER COSTANTINI,
Corrections Officer, PHILIP LANGDON,
Corrections Officer, JOHN DOE 1-8,
Corrections Officers, ANTHONY J. ANNUCCI,
Acting Commissioner of the New York State
Department of Corrections and Community
Supervision, MARK ROYCE, Former
Superintendent of Green Haven Correctional
Facility, JOHN DOE 9, supervising employee
of DOCCS, in their individual capacities,

                        Defendants.
--------------------------------------------------------x

        By letter dated November 18, 2024, Defendants Anthony Annucci and Mark Royce

(together, the "DOCCS[1] Defendants"), asked the Court to seal the exhibits attached to the

Declaration of Maurice Nwikpo-Oppong offered in support of the DOCCS Defendants' motion

for summary judgment. (Docket No. 125).  By letter dated November 18, 2024, Plaintiff Melvin

Virgil ("Virgil" or "Plaintiff") sought permission to file under seal redacted copies of his

memorandum of law in opposition, redacted copies of deposition transcripts, and certain exhibits

in support of the opposition. (Docket No. 126).  Judge Cathy Seibel temporarily granted the

requests but instructed the DOCCS Defendants to make the required showing meriting sealing by

December 3, 2024. (Docket Nos. 131-32).  On December 3, 2024, Defendant Philip Langdon

("Langdon") filed a letter stating he did not take a position on sealing independent of what the

---

[1] DOCCS stands for the New York State Department of Corrections and Community Supervision.

other Defendants wished to keep sealed. (Docket No. 142).  On December 3, 2024, the DOCCS

Defendants filed a letter, (1) agreeing to remove the confidentiality designation from certain

documents, (2) agreeing to file redacted versions of some documents, and (3) continuing to seek

the sealing of a subset of documents. (Docket No. 143).  On December 4, 2024, Plaintiff

promptly responded and questioned the DOCCS Defendants' justification. (Docket No. 144).

On December 6, 2024, Judge Seibel gave "Defendants one more chance to justify sealing" and

ordered Defendants to provide a "document-by-document justification" by December 13, 2024.

(Docket No. 145).  The DOCCS Defendants timely responded, reducing their request to seal to

eighteen documents, and providing a document-by-document justification for these remaining

eighteen documents.[2] (Docket No. 146).  On December 19, 2024, Plaintiff responded, raising

questions about the level of justification Defendants provided for the eighteen documents.

(Docket No. 147).  By Order, dated December 30, 2024, Judge Seibel referred the matter to the

undersigned to determine whether the eighteen documents should be sealed. (Docket No. 148).

 The DOCCS Defendants seek permission to seal two inadvertently produced privileged

documents and sixteen other documents whose "disclosure would jeopardize the safety and

security of DOCCS' facilities and the individuals within, expose personal and confidential

information of non-party individuals, and violate laws concerning the disclosure of the identity

of alleged victims of sexual abuse." (Docket No. 146 at 1).  Plaintiff asserts the DOCCS

Defendants' justifications are "conclusory and unsupported suggestions" that the materials would

"jeopardize and compromise facility security." (Docket No. 147 at 1).  Plaintiff also argues that

---

[2] The DOCCS Defendants are directed to unseal and refile the 82 documents that they "agree . . . should not remain under seal." (Docket No. 146 at 2).  These documents are Docket Nos. 134-1 (also filed as 120-5 and 122-2), 134-2 through 134-4, 134-7 (also filed under 120-4), 134-8 (also filed under 120-6 and 122-1), 134-9, 134-10, 134-13 through 134-18, 134-20, 134-21, 134-23 through 134-25, 134-27 through 134-31, 134-33, 134-35 through 134-39, 134-41 through 134-59, 134-62, 134-64, 134-66 through 134-69, 134-71 through 134-73, 134-75 through 134-89, and 120-7.

many of the DOCCS Defendants' concerns can be resolved with redactions, and that the privilege claim has been waived for the two documents inadvertently produced. (*Id.* at 1-2). For the reasons stated below, the Court grants in part and denies in part the DOCCS Defendants' requests to seal.

## I. STANDARD FOR SEALING

"There is a long-established general presumption in favor of public access to judicial documents." *GSC Logistics, Inc. v. Amazon.com Servs. LLC*, 23-CV-5368 (JGLC), 2023 WL 4993644, at *3 (S.D.N.Y. Aug. 4, 2023) (citation omitted). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"). The Second Circuit has set forth a three-part test to determine whether documents submitted should be sealed or redacted in light of the common law right of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). "First, a court must conclude that the documents at issue are 'judicial documents' to which a presumption of access attaches . . . Second, a court must determine the weight of the presumption of access . . . Third, a court must balance 'competing considerations' against the presumption of access." *GSC Logistics,* 2023 WL 4993644, at *3 (citations omitted). The countervailing factors a court may consider are the danger of impairing law enforcement, the danger of impairing judicial efficiency, and the privacy interests of those resisting disclosure. *See Lugosch*, 435 F.3d at 120.

In addition to the common law right of access, "the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." *Id.* (quotation and citation omitted). Two different approaches are available to the Court in making this determination. In the "experience and logic" approach, the Court considers "whether the

documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quotation and citation omitted). This approach is typically used "in support of finding a history of openness." *Id.* (quotation and citation omitted). The other approach "considers the extent to which the judicial documents are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (alteration in original) (quotation and citation omitted).

In particular, "documents submitted to a court for its consideration in a summary judgment motion are — as a matter of law — judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Doe v. City of New York*, 15-CV-117 (AJN), 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) (quoting *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018)). "This presumption exists regardless of the role the specific document plays in a court's adjudication of a motion." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 14-MC-2542 (VSB), 2023 WL 196134, at *2 (S.D.N.Y. Jan. 17, 2023), *reconsideration denied*, 2023 WL 3966703 (S.D.N.Y. June 13, 2023) (citation omitted).

 "Higher values that may justify the sealing or redaction of documents include the attorney-client privilege, national security concerns, law enforcement interests and the privacy interests of third parties." *GSC Logistics,* 2023 WL 4993644, at *5. The party seeking to seal the documents "bears the burden of showing that higher values overcome the presumption of public access. *Kewazinga Corp. v. Google LLC*, 20 Civ. 1106 (LGS), 2024 WL 4558070, at *1 (S.D.N.Y. Oct. 21, 2024) (quoting *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017)). Sealing of judicial documents is only permissible "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is

narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quotation and citation omitted).

## II.  DISCUSSION

As an initial matter, the eighteen documents at issue, which were submitted to the Court "for its consideration in a summary judgment motion," constitute "judicial documents" to which a presumption of access attaches. *Doe*, 2019 WL 4392533, at *2.  "The Second Circuit has instructed that the weight of the presumption of public access given to summary judgment filings is of the highest: documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *United Specialty Ins. Co. v. LIC Contracting, Inc.*, 17 Civ. 5736 (EK)(VMS), 2022 WL 74157, at *3 (E.D.N.Y. Jan. 6, 2022) (internal quotations and citations omitted).  Thus, the Court will focus on the third part of the test – balancing the competing considerations against the presumption of access, *GSC Logistics,* 2023 WL 4993644, at *3, to determine whether "sealing is necessary to preserve higher values" and is "narrowly tailored to achieve that aim," *Next Caller Inc. v. Martire*, 368 F. Supp. 3d 663, 666 (S.D.N.Y. 2019) (citations omitted).

### A.  Privileged Documents

The DOCCS Defendants seek to seal two documents that they assert are protected by the attorney-client privilege and were inadvertently produced: Docket Nos. 134-32 and 134-34. (Docket No. 146 at 2).  Plaintiff argues that the DOCCS Defendants waived the privilege. (Docket No. 147 at 2).

"It is well-settled in this Circuit that the attorney-client privilege may be a sufficiently compelling reason to defeat the public's right of access to judicial documents." *J.L. on behalf of J.P. v. New York City Dep't of Educ.*, 17-CV-7150 (PAC)(KHP), 2024 WL 291218, at *3

(S.D.N.Y. Jan. 25, 2024).  The attorney-client privilege constitutes a "higher value" that may justify sealing, *see GSC Logistics*, 2023 WL 4993644, at *5, and "is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records," *United Specialty*, 2022 WL 74157, at *3 (quotation and citation omitted). *See also Boothbay Absolute Return Strategies, LP v. Belgische Scheepvaartmaatschappij-Compagnie Mar. Belge SA,* 24-CV-1445 (JGLC), 2024 WL 1097128, at *8-*9 (S.D.N.Y. Mar. 13, 2024) (finding the "interest in maintaining the confidentiality of privileged materials outweighs the presumption of public access to those documents").

The Court agrees that both Docket Nos. 134-32 and 134-34 are privileged documents. Docket No. 134-32 is a Counsel's Office Monthly Report labeled "Advice of Counsel" at the very top. (Docket No. 134-32).  The DOCCS Defendants assert this document constitutes "attorney-work product that is also protected by attorney-client privilege," and they intend to seek to claw back the document. (Docket No. 146 at 2).  Docket No. 134-32 provides "advice rendered by the attorney to the client." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441–42 (S.D.N.Y. 1995).  The document constitutes the "interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re County of Erie*, 473 F.3d. 413, 419 (2d Cir. 2007).  Similarly, Docket No. 134-34 is an e-mail exchange dated February 25, 2020, with the subject line "Update" from Assistant Attorney General Rebecca Durden, to Deputy Commissioner and DOCCS Counsel Adam Silverman. (Docket No. 134-34).  The document provides a legal update and was forwarded to Defendant Anthony Annucci and another DOCCS official. (*Id.*).  It constitutes a "communicatio[n] (1) between a client and his or her attorney (2) that [is] intended to be, and in fact w[as], kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126,

132 (2d Cir. 2011). Moreover, the e-mail reflects "advice rendered by the attorney to the client." *Bank Brussels*, 160 F.R.D. at 441–42. Therefore, the Court finds that both of these documents are protected by the attorney-client and work product privileges.

Under Federal Rule of Evidence 502(b), "no waiver results from 'inadvertent' disclosure if the privilege holder 'took reasonable steps to prevent disclosure' and 'promptly took reasonable steps to rectify the error.'" *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016). Where the parties have a claw back order, courts have only found wavier to be appropriate if the *production* of privileged material was "completely reckless." *Dorce v. City of New York*, Civil Action No. 19 Civ. 2216 (JLR)(SLC), 2024 WL 139546, at *5 (S.D.N.Y. Jan. 12, 2024) (citation omitted). To be "completely reckless," "the producing party must have shown no regard for preserving the confidentiality of the privileged documents." *Id.* (citation omitted). Such carelessness can be found in repeated production of the subject documents or when a party fails to object to an adversary's use of a privileged document, such as in a deposition. *Sure Fit Home Prods., LLC v. Maytex Mills Inc.*, 21 Civ. 2169 (LGS)(GWG), 2022 WL 1597000, at *2 (S.D.N.Y. May 20, 2022). Where a party had "multiple opportunities . . . to exercise its rights under the Protective Order . . . and insist upon clawing back the [memo]" but failed to do so, the party waived the privilege. *In re Actos Antitrust Litig.*, 685 F. Supp. 3d 153, 157 (S.D.N.Y. 2023).

In addition, while "an appropriately worded protective order may prevent waiver due to a producing party's *disclosure* of privileged information, that party's subsequent failure to timely and specifically object to the *use* of that information — during a deposition, for example — *can* waive any applicable privilege." *Certain Underwriters,* 218 F. Supp. 3d at 201 (emphasis in original) (finding that even though the exhibit was labeled "work product," counsel permitted

questions about it at the deposition and failed to timely object to the party's use of the privileged material); *see also United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7527 (JMF), 2015 WL 5051679, at *4 (S.D.N.Y. Aug. 26, 2015) (collecting cases) (The Court held that "as to the documents used in depositions, the Protective Order's non-waiver provision does not apply."). "Failing to object to the use of privileged documents during depositions may constitute a waiver." *Douglas v. City of Peekskill*, 21-cv-10644, 2024 WL 1598222, at *2 (S.D.N.Y. Apr. 12, 2024). Even if a party "later changed its mind about the use of those documents after the deposition [this] does not cure the waiver." *Id.* at *3. Further, "[i]nadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." *In re Actos Antitrust Litig.*, 703 F. Supp. 3d 468, 472 (S.D.N.Y. 2023).

Plaintiff argues that since the DOCCS Defendants did not assert that the documents were privileged when (1) Plaintiff used the documents at a deposition held in January 2024, (2) Plaintiff attached the documents to his summary judgment opposition, which was served in October 2024, and (3) the DOCCS Defendants failed to mention privilege when requesting sealing in their December 3, 2024 letter, the privilege has been waived. (Docket No. 147 at 2). The Court agrees. Here, Plaintiff used Docket No. 132-32 in Defendant Annucci's January 2024 deposition, and Defendant Annucci "specifically alluded" to Docket No. 134-34 in the same deposition. (*Id.*). The DOCCS Defendants did not promptly object to the use of the documents in the deposition and failed to promptly claw back the documents after the deposition, thereby waiving the privilege. *See In re Actos,* 703 F. Supp. 3d at 472; *see also Douglas*, 2024 WL 1598222, at *2-*3*; U.S. v. Lax*, 1:18-cv-04061 (ILG)(PK), 2022 WL 17987043, at *7 (E.D.N.Y. Dec. 29, 2022). Further, while the parties in the present litigation have a claw back order, it only

states that "no privilege or protection is waived by *disclosure* connected with this lawsuit." (Docket No. 86 at 8) (emphasis added).  The claw back order does not address waiver by *use* of a privileged document. (*See generally* Docket No. 86).  Therefore, for the "documents used in depositions, the Protective Order's non-waiver provision does not apply." *Wells Fargo Bank,* 2015 WL 5051679, at *4.

Moreover, the DOCCS Defendants were "completely reckless" to remain silent for so long when the documents were "brought to their attention multiple times in the preceding months." *In re Actos End-Payor Antitrust Litigation,* No. 13-CV-9244 (RA)(SDA), 2023 WL 6197403, at *3 (S.D.N.Y. Sept. 22, 2023).  Therefore, the Court finds the DOCCS Defendants waived the privilege over Docket Nos. 134-32 and 134-34 and directs the DOCCS Defendants to refile these documents publicly.

**B.  Documents that Would Jeopardize the Safety and Security of DOCCS' Facilities**

The DOCCS Defendants also seek to seal nine documents that they assert would "jeopardize the safety and security of DOCCS's facilities" and the people inside these facilities: Docket Nos. 134-5, 134-6, 134-11,[3] 134-91, 134-60, 134-61, 134-63, 134-19 and 134-65. (Docket No. 146 at 3-4).  In particular, they claim that revealing the names of non-party inmates and officers "threatens both the personal privacy of those individuals and the safety of the facilities," potentially through retaliation for cooperation in an investigation. (*Id.* at 3).  They also assert that statements made to the Office of Special Investigations ("OSI") and investigative bodies are made under the promise of confidentiality, comparable to the law enforcement

---

[3] While Defendants cite Docket No. 134-12 in their letter as the transcript of Defendant Anthony Annucci's deposition testimony, (Docket No. 146 at 4), the Court believes that the DOCCS Defendants intended to move to seal Docket No. 134-11, which is the transcript of Defendant Anthony Annucci's deposition testimony, rather than Docket No. 134-12, which is a memorandum dated December 4, 2015, from OSI to several DOCCS commissioners regarding OSI cases of interest.  Therefore, the Court considers Docket No. 134-11.

privilege. (*Id.*). Plaintiff argues the DOCCS Defendants do not show how disclosure would jeopardize security and that the concerns can be resolved through targeted redactions rather than sealing entire documents. (Docket No. 147 at 1).

The law enforcement privilege serves as a specific ground for sealing, *Collado v. City of New York*, 193 F. Supp. 3d 286, 290 (S.D.N.Y. 2016), and protecting the identities of cooperators and hindering law enforcement are legitimate concerns warranting redaction, *see Doe*, 2019 WL 4392533, at *2. "The purpose of the law enforcement privilege is 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *Collado*, 193 F. Supp. 3d at 290 (citation omitted). If "confidentiality cannot be assured, cooperation will not be forthcoming." *Amodeo II*, 71 F.3d at 1050. Therefore, courts must weigh the risk of decreasing future cooperation and interfering with law enforcement against the presumption of access. *See id.* The party seeking sealing must make a "particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *GSC Logistics*, 2023 WL 4993644, at *6 (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)). Moreover, the sealing must be "narrowly tailored to achieve [the] aim." *Id.* at *5 (quoting *Lugosch*, 435 F.3d at 124).

First, Docket Nos. 134-5 and 134-6 are body-worn camera videos. (Docket Nos. 134-5 and 134-6). Docket No. 134-5 is a video from former Defendant Philip Langdon's body-worn camera, and Docket No. 134-6 is a video from Defendant Aaron Finn's body-worn camera. (*Id.*). The DOCCS Defendants assert these exhibits "will put the safety and security of Green Haven at

risk because the video[s] depic[t] the inside of the facility as well as [the] layout for the area

where the incident occurred." (Docket No. 146 at 3).  They claim disclosure of this information

"would pose a serious risk to the security of the officers by publicly displaying internal prison

layouts" and that the videos show non-parties. (*See id.*).  Plaintiff argues that Defendants'

arguments are conclusory and lack specific showings of how the documents might jeopardize

security. (Docket No. 147 at 1).  While the DOCCS Defendants have not described the security

concern with specificity, the Court finds merit in the DOCCS Defendants' concerns.  While one

court in this Circuit has previously granted leave to file bodycam footage under seal, *see United

States v. Harrison*, 683 F. Supp. 3d 184, 188, n.1 (N.D.N.Y. 2023), another court in this Circuit

denied requests to seal body-worn camera videos where defendants' arguments were "conclusory

and unavailing," *Preston v. City of Rochester*, 6:22-CV-06525 EAW, 2024 WL 4266528, at *3

(W.D.N.Y. Sept. 23, 2024).  Here, the videos depict the internal layout of the prison and show

several officers and inmates who are not parties to the action, thus, posing a risk to the safety and

security of the prisons. (Docket Nos. 134-5, 134-6).  In addition, the Second Circuit has

previously held that the "privacy interests of innocent third parties . . . should weigh heavily in a

court's balancing equation." *Amodeo II*, 71 F.3d at 1050 (quoting *Gardner v. Newsday, Inc. (In

re Newsday, Inc.)*, 895 F.2d 74, 79-80 (2d Cir. 1990)); *see also Besuden v. City of New York*,

Civil Action No.: 21 Civ. 8452 (LAK)(SLC), 2022 WL 3867852, at *1 (S.D.N.Y. Aug. 30,

2022) (permitting body-worn camera footage to remain under seal upon the parties' consent to

protect the interests of non-party arrestees).  Accordingly, Docket Nos. 134-5 and 134-6 may

remain under seal.

       Second, Docket Nos. 134-11 and 134-91 are transcripts from Defendant Anthony

Annucci and Defendant Mark Royce's depositions. (Docket Nos. 134-11 and 134-91).  The

DOCCS Defendants argue that portions of these transcripts discuss "confidential information [about] the policy and procedures at DOCCS facilities including those designed to protect the safety and security of the individuals within the facilities." (Docket No. 146 at 4). The DOCCS Defendants also assert that disclosure "would jeopardize and compromise facility security and the safety of incarcerated individuals and officers." (*Id.*). Plaintiff asserts that "most of the DOCCS Defendants' stated concerns can be resolved through targeted redactions rather than wholesale sealing." (Docket No. 147 at 1). The Court agrees. Sealing the entire transcripts is not "narrowly tailored" to achieve the aim of protecting facility security. *See GSC Logistics*, 2023 WL 4993644, at *5; *see also Robinson v. De Niro*, 19-CV-9156 (LJL)(KHP), 2022 WL 2712827, at *3 (S.D.N.Y. July 13, 2022) (finding the request to seal a 100-page transcript was not "narrowly tailored" and requiring defendants to submit a revised motion to seal the transcripts with narrowly tailored redactions); *see also Kewazinga Corp. v. Google LLC*, 20 Civ. 1106 (LGS), 2024 WL 3442428, at *2 (S.D.N.Y. July 17, 2024). Accordingly, the DOCCS Defendants must refile Docket Nos. 134-11 and 134-91 with redactions to the transcripts that are narrowly tailored to facility security and the safety of the individuals within the facility.

Third, Docket Nos. 134-60 and 134-61 are documents entitled "Executive Team Meeting" and discuss DOCCS and its facilities' policies and procedures. (Docket Nos. 134-60, 134-61). The DOCCS Defendants assert that the publication of these documents would "jeopardiz[e] the safety and security of the facilities and the individuals within." (Docket No. 146 at 4). The documents outline bulleted notes from meetings in September 2018, over six years ago. (*See* Docket Nos. 134-60, 134-61). "[T]he older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed." *In re Keurig*,

2023 WL 196134, at *4.  Furthermore, the "older the information contained in documents, the more detailed the supporting material should be submitted to support the sealing of the documents." *Id.* at *5.  The DOCCS Defendants have "not attempted to show that the information is not 'stale' and why disclosure would still cause harm." *Matter of Upper Brook Companies*, 22-mc-97 (PKC), 2023 WL 172003, at *6 (S.D.N.Y. Jan. 12, 2023) (citation omitted).  Nevertheless, information about assaults, as well as any information about breaches of security, may indicate weaknesses at certain correctional facilities and make them vulnerable to future security breaches.  Thus, that information should be redacted.  Accordingly, the DOCCS Defendants must refile Docket Nos. 134-60 and 134-61 publicly, with information about assaults and security breaches redacted.

Fourth, Docket No. 134-63 is a March 2022 document containing a report by OSI. (Docket No. 134-63).  The DOCCS Defendants assert that the document "discusses how OSI operates and how it investigates cases," so the law enforcement privilege applies. (Docket No. 146 at 4).  The Court agrees that these documents are properly sealed under the law enforcement privilege to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Collado*, 193 F. Supp. 3d at 290 (citations omitted).  Accordingly, Docket No. 134-63 is properly sealed.

Fifth, Docket No. 134-65[4] is a memorandum from Defendant Mark Royce to Defendant Anthony Annucci, along with the acting executive deputy commissioner and deputy counsel,

---

[4] The DOCCS Defendants incorrectly identify Docket No. 134-65 as a document entitled "Executive Team Meeting – September 17, 2018." (Docket No. 146 at 4-5).  Nevertheless, the reasoning the DOCCS Defendants assert to seal this document accurately reflects the contents of Docket No. 134-65.

outlining the CANY Site Visit. (Docket No. 134-65). The DOCCS Defendants argue that

unsealing this document "would put the safety and security of the facilities at risk because this

report discusses how OSI operates and how it investigates cases," and therefore falls under the

law enforcement privilege. (Docket No. 146 at 4-5). The Court agrees that this document is

protected by the law enforcement privilege because it relates to an OSI investigation and its

findings, including follow-up responses to an early CANY site visit. The memorandum details

allegations CANY received and investigated, as well as its response to the allegations. This is

the type of document that the law enforcement privilege protects. *See In re The City of New

York*, 607 F.3d 923, 944 (2d Cir. 2010) (finding the law enforcement privilege applied to field

reports that detailed undercover operations and law enforcement techniques of the NYPD, as this

would hinder the NYPD's ability to conduct future undercover investigations); *see also Otterson

v. National R.R. Passenger Corp.*, 228 F.R.D. 205, 208-09 (S.D.N.Y. 2005) (finding the request

for interviews of police department officials may reveal the investigative techniques at issue).

Accordingly, Docket No. 134-65 is properly sealed.

Sixth, the DOCCS Defendants seek to seal Docket No. 134-19, an e-mail thread entitled

"The Marshall Project: Karl Taylor Died in a New York Prison. Now the State Has Agreed to

Pay Millions." (Docket No. 134-19). They "do not dispute that [this document] contains a

publicly available portion of a report at the bottom of the email conversation," but note that two

of the four pages contain "a discussion about what actions DOCCS should take as a result of the

report." (Docket No. 146 at 4). Thus, they assert that "Plaintiff should simply replace this

exhibit with a copy of the report in question." (*Id.*). The Court agrees that the only portion of

this document that should be unsealed is the publicly available portion. Courts "routinely deny

sealing requests where, as here, the information to be sealed is already publicly available."

*Grossberg v. Fox Corp.*, 23-CV-2368 (JMF), 2023 WL 2612262, at *1 (S.D.N.Y. Mar. 23, 2023) (collecting cases). Sections of the document that were publicly disclosed should be unredacted. *See In re New York Times,* 799 F. App'x 62, 65 (2d Cir. 2020); *see also Ocasio v. Noeth*, 19-CV-06894 EAW, 2021 WL 1437970, at *1-*2 (W.D.N.Y. Apr. 16, 2021) (denying sealing of sections of a memorandum of law that was publicly available but permitting sensitive aspects of the memorandum to remain under seal); *see also United States v. Chang*, 18-CR-00681 (NGG), 2024 WL 1308775, at *1, n.3 (E.D.N.Y. Mar. 27, 2024) (redacting only the portions of the documents that were not publicly available). The remainder of this e-mail thread contains privileged information relating to DOCCS' thoughts and reactions to this article. The e-mails that follow the article must be sealed under the law enforcement privilege to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Collado*, 193 F. Supp. 3d at 290 (citations and quotations omitted). This portion of the document merits protection because it involves details of investigative procedures and internal law enforcement protocols. *See Otterson*, 228 F.R.D. at 208-09; *see also In re The City of New York*, 607 F.3d at 944. Accordingly, Docket No. 134-19 must be refiled with everything but the already publicly available information redacted.

In summary, Docket Nos. 134-5, 134-6, 134-63 and 134-65 may remain under seal; and the DOCCS Defendants are directed to refile Docket Nos. 134-11, 134-19, 134-60, 134-61 and 134-91 with redactions.

**C.  Documents that Contain the Names of Alleged Victims of Sexual Crimes**

The DOCCS Defendants seek to seal Docket Nos. 134-12 and 134-26 because they contain the names of victims of sexual crimes and sexual abuse, and they are protected from public disclosure pursuant to New York Civil Rights Law § 50-b(1). (Docket No. 146 at 5).

"Protecting the identity of sexual assault survivors and the details of their assaults is traditionally considered private and has been widely recognized as a compelling reason to limit public access to judicial documents." *Doe 1 v. JP Morgan Chase Bank, N.A.*, 742 F. Supp. 3d 387, 397 (S.D.N.Y. 2024).  "Where privacy interests require redactions so systematic that unsealing a document is 'more likely to mislead than [ ] inform the public,' as would be the case here, sealing the entire document is the more appropriate course." *Id.* at 398 (quoting *Amodeo II*, 71 F.3d at 1052).  On the other hand, where the documents are a "significant portion of the factual record" and "directly affect the Court's adjudication of Defendants' motion for summary judgment," courts permit redactions rather than full sealing. *Cremeans v. Miller*, 5:20-cv-00535 (BKS/TWD), 2022 WL 7286974, at *4 (N.D.N.Y. Aug. 24, 2022), *report and recommendation adopted*, 2022 WL 4591745 (N.D.N.Y. Sept. 30, 2022) (citations and quotations omitted).  In such cases, the Court finds redacting the names of a victim to be "narrowly tailored to serve the higher value of safeguarding the victim's identity." *Scott v. Graham*, 16-CV-2372 (KPF)(JLC), 2016 WL 6804999, at *2 (S.D.N.Y. Nov. 17, 2016) (citations and quotations omitted); *see also Doe v. Gooding*, 20-cv-06569 (PAC), 2021 WL 5991819, at *4 (S.D.N.Y. Jul. 29, 2021).

Docket No. 134-12 is a December 4, 2015 memorandum that discusses investigations of unrelated sexual assaults. (Docket No. 134-12).  The Court agrees that the information regarding the unrelated sexual assaults should be sealed to protect the identities of the victims. *See Doe 1*, 742 F. Supp. 3d at 397-98.  However, only the first six pages of the document (following the

exhibit cover page) include discussions of unrelated sexual assaults. (Docket No. 134-12).  The next 21 pages discuss other types of investigations, such as inmate assault, excessive use of force and staff misconduct.  Nevertheless, these pages should also remain under seal to protect the privacy of third parties, the safety and security of the inmates and staff at those correctional facilities, and to protect the investigations. *See Amodeo II*, 71 F.3d at 1050; *see also Collado*, 193 F. Supp. 3d at 290.  Accordingly, Docket No. 134-12 is properly sealed.

In addition, the DOCCS Defendants assert that Docket No. 134-26, a memorandum dated September 27, 2021 outlining OSI cases of interest, should be sealed to protect the victims of sexual assault. (Docket No. 134-26, Docket No. 146 at 5).  Again, only the first three pages (following the cover page) involve sexual assaults, while the remaining pages involve other types of investigations. (Docket No. 134-26).  In fact, one of the cases in Docket No. 134-26 involves the Plaintiff in the present case. (*Id.* at 5).  As a result, portions of this document "directly affect the Court's adjudication of Defendants' motion for summary judgment," and should be publicly filed. *Cremeans,* 2022 WL 7286974, at *4 (internal quotations and citations omitted).  However, the remainder of the document should be sealed because it contains information relating to unrelated sexual assaults and sensitive investigations. *See id.*; *see also Doe 1*, 742 F. Supp. 3d at 397-98; *Amodeo II*, 71 F.3d at 1050; *Collado*, 193 F. Supp. 3d at 290.  This information, as stated previously, is unrelated, is highly sensitive, relates to third parties, and may affect the safety and security of the inmates and staff at those correctional facilities.  Accordingly, Docket No. 134-26 must be refiled with the unrelated investigations completely redacted, and the section relating to the Plaintiff publicly filed.

In summary, Docket No. 134-12 may remain fully sealed, and the DOCCS Defendants are directed to refile Docket No. 134-26 with redactions consistent with this Order.

**D. Irrelevant Documents**

Finally, the DOCCS Defendants seek to seal five documents – Docket Nos. 134-22, 134-40, 134-70, 134-74 and 134-90 – that they assert have no relevance to the present matter and whose exposure "could cause severe harm to DOCCS" and could expose non-parties' private and personal information. (Docket No. 146 at 5-6). Plaintiff argues there is "zero merit" to this assertion. (Docket No. 147 at 2).

First, Docket No. 134-22 is an e-mail with the subject line "Two Fed. Civil Rights Cases," the first of which is Plaintiff's case and the second of which is an unrelated case. (Docket No. 134-22). The DOCCS Defendants assert that disclosure of the second unrelated case "would expose personal and private information about a non-party individual." (Docket No. 146 at 5). The Court agrees that the non-party individual's case in the second paragraph should be redacted to protect the non-party. *See Amodeo II*, 71 F.3d at 1050; *see City of Almaty, Kazakhstan v. Ablyazov,* 15-cv-5345 (AJN), 2021 WL 1177737, at *2 (S.D.N.Y. Mar. 29, 2021); *see also United States v. Maxwell*, 20-CR-330 (AJN), 2020 WL 7646891, at *1 (S.D.N.Y. Dec. 23, 2020). The information relating to Plaintiff's case will likely be key in deciding the summary judgment motion and should therefore be unsealed. *Cremeans,* 2022 WL 7286974, at *4. Accordingly, the DOCCS Defendants are directed to refile Docket No. 134-22, with only the second paragraph redacted.

Second, Docket No. 134-40 is an e-mail exchange from December 2015, with the subject line "Call with DOJ-Civil Rights Division and NDNY," which the DOCCS Defendants contend includes a "reference to the present matter." (Docket No. 134-40, Docket No. 146 at 6). Upon review of the document, the Court does not see any reference to the present case. (Docket No. 134-40). Therefore, because the document includes discussions of unrelated cases involving

third parties, it should remain sealed to protect the privacy of third parties and to protect those investigations. *See Amodeo II*, 71 F.3d at 1050; *see also Collado*, 193 F. Supp. 3d at 290. Accordingly, Docket No. 134-40 is properly sealed.

Third, Docket No. 134-70 is a January 25, 2017 memorandum from Scott Kelly to Joseph F. Bellnier, regarding "DOCCS Body Worn Camera Pilot." (Docket No. 134-70). The DOCCS Defendants argue that disclosure "would create a substantial risk to security and safety of DOCCS' facilities and the individual[s] within." (Docket No. 146 at 6). However, the document outlines the rollout of a pilot program in 2017, which was over eight years ago. (Docket No. 134-70). In addition, the DOCCS Defendants have "not attempted to show that the information is not 'stale' and why disclosure would still cause harm." *Matter of Upper Brook Companies*, 2023 WL 172003, at *6 (citation omitted). Moreover, they have not shown how the few references to storage of the body-worn camera would "create a substantial risk to [the] security and safety of DOCCS' facilities and the individual[s] within." (Docket No. 146 at 6). The DOCCS Defendants have not met their burden of showing more than a "'[b]road and general' appeal to safety, security, or the like." *United States v. Sater*, 98-CR-1101 (ILG), 2019 WL 3288389, at *5 (E.D.N.Y. July 22, 2019) (citation omitted). Accordingly, Docket No. 134-70 must be refiled publicly, unless Defendants can demonstrate to the Court by March 10, 2025 why the information is not stale, and the document should remain under seal.

Fourth, Docket No. 134-74 is a November 6, 2019 memorandum with the subject line "Facility Issues Summary Report – Green Haven Correctional Facility." (Docket No. 134-74). The DOCCS Defendants assert the document "references gang-related activity within a facility, which creates a substantial risk to security and safety of the facilities." (Docket No. 146 at 6). Although there is reference to a gang and security-related issue, other parts of the document

appear to reference innocuous information. (Docket No. 134-74).  Moreover, other than their broad reference to safety and security, the DOCCS Defendants have not provided a particularized reason why this document should be sealed in full. *See Sater,* 2019 WL 3288389, at *5.  Thus, they may only redact the information relating to gangs and security issues, which is "narrowly tailored to achieve [the] aim [of preserving higher values]." *GSC Logistics*, 2023 WL 4993644, at *5 (citation omitted).  Accordingly, the DOCCS Defendants are directed to refile Docket No. 134-74 with appropriate redactions.

Fifth, Docket No. 134-90 is an April 16, 2020 e-mail with the subject line "Email OSI Update in lieu of Thursday meeting." (Docket No. 134-90).  The DOCCS Defendants state that this document "discusses the current status of the present matter, but it also reference[s] the status" of other OSI cases, which would "expose personal, private, and in one case, medical information about non-party individuals." (Docket No. 146 at 6).  The Court finds that the section relating to Plaintiff is relevant and should not be sealed, particularly since Plaintiff opposes sealing. (*See* Docket No. 147).  Thus, the document must be refiled with everything redacted, except for the section relating to Plaintiff. *See City of Almaty, Kazakhstan,* 2021 WL 1177737, at *2; *see also Maxwell*, 2020 WL 7646891, at *1.  Accordingly, Docket No. 134-90 must be refiled with appropriate redactions.

In summary, the DOCCS Defendants must refile Docket Nos. 134-22, 134-74 and 134-90 with the appropriate redactions; Docket No. 134-40 may remain sealed; and Docket No. 134-70 must be unsealed in its entirety, unless they can explain why the information is not stale.

## III.  CONCLUSION

For the foregoing reasons, the DOCCS Defendants' motions regarding sealing are granted in part and denied in part.  The DOCCS Defendants are directed to (1) publicly refile

Docket Nos. 134-32 and 134-34; (2) publicly refile Docket No. 134-70 unless they can explain by March 10, 2025 why the information is not stale; (3) keep Docket Nos. 134-5, 134-6, 134-12, 134-40, 134-63 and 134-65 under seal; and (4) refile Docket Nos. 134-11, 134-19, 134-22, 134-26, 134-60, 134-61, 134-74, 134-90 and 134-91 with narrowly-tailored redactions.

In addition, the DOCCS Defendants are directed to unseal and refile the 82 documents that they agreed did not merit sealing: Docket Nos. 134-1, 134-2 through 134-4, 134-7 through 134-10, 134-13 through 134-18, 134-20, 134-21, 134-23 through 134-25, 134-27 through 134-31, 134-33, 134-35 through 134-39, 134-41 through 134-59, 134-62, 134-64, 134-66 through 134-69, 134-71 through 134-73, and 134-75 through 134-89.

Dated:   March 3, 2025
         White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge
